UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JILL E. PRESTON, | ) | CV 09-8543 SVW (RZx) |
|           Plaintiff, | ) | |
|       v. | ) | |
| | ) | ORDER GRANTING-IN-PART AND |
| THE MAYO CLINIC, a Corporation; | ) | DENYING-IN-PART DEFENDANTS' |
| STEELE FAUST; STEPHANIE WENDORFF; | ) | MOTION FOR SUMMARY JUDGMENT |
| KAREN NATION; MAYO COLLABORATIVE | ) | [22] |
| SERVICES, INC.; MAYO FOUNDATION | ) | |
| FOR MEDICAL EDUCATION AND | ) | |
| RESEARCH; and DOES 3-50, | ) | |
| inclusive, | ) | |
|           Defendants. | ) | |

**I.    INTRODUCTION**

Plaintiff Jill Preston ("Plaintiff" or "Preston") is suing her former employer, the Mayo Clinic and Mayo Collaborative Services, Inc. (collectively "Mayo") as well as her former supervisor, Steele Faust, and the Senior Human Service Partners, Stephanie Wendorff and Karen Nation (collectively, "Defendants") in an employment discrimination

suit.[1]  Specifically, Preston alleges violations of Fair Employment and Housing Act (Gov. Code § 12920 et seq.), retaliation for complaining about discrimination, breach of contract, wrongful termination, and failure to prevent discrimination and retaliation.  Preston asserts that Defendants engaged in discrimination on the basis of gender and marital status.

In September 13, 2004 Preston was hired as the Regional Manager for the Los Angeles area to sell laboratory testing services offered by Mayo Medical Laboratories.  Faust, as the Hiring Supervisor for the Regional Manager positions, participated in Preston's interview process and made the ultimate decision to hire Preston.

From the time that Preston was hired until around January 2007, Preston's direct supervisor was Mike Weatherly.  Weatherley evaluated Preston for her annual performance review for 2005, for which she was ranked "Achieves Expectations" for essentially all of the categories. In January 2007, Faust took over as supervisor of the Regional Managers in the western part of the country, including Preston.  Faust performed Preston's 2006 performance review, for which Preston also received "Achieves Expectations" for most categories.

In March 2008, Faust issued Preston's 2007 performance review, in which Preston was ranked "Needs Further Development" in many categories.  Faust also provided her with a "Corrective Action" and Performance Improvement Plan.  Preston alleges that no other Regional Manager was required to perform the tasks outlined in the "Performance Improvement Plan"; however, Defendants show that Faust also issued a

---

[1] The individual Defendants were terminated during the pendency of this suit in state court.

"Corrective Action" and "Performance Improvement Plan" to Dave Brown, a Regional Manager who is a married male.

In April 2008, Preston responded to the 2007 performance review by sending 47 page rebuttal to the Senior Human Resources Service Partner and a 30 page document to the Director of Sales arguing that 2007 Performance Review was unwarranted.  Preston also submitted two additional memos to Defendants to protest the 2007 performance review.  In April 2008, Preston also submitted a formal internal appeal of the Correction Action and "Performance Improvement Plan", which was subsequently denied in October 2008.

Preston's first allegations for gender discrimination appear to have arose on May 27, 2008 or sometime thereabout.  On that day, Preston also sent an email to Defendant's HR department and the Director of Sales alleging that Faust discriminated against her because of her gender.  Preston accused Faust of doubling the bid Preston had already discussed with Primex, a medical laboratory.  Shortly thereafter, Preston went on a four month leave of absence for bereavement.

During her leave, Preston filed an administrative complaint against Defendants with the California Department of Fair Employment and Housing alleging, for the first time, both sex and marital status discrimination.  The Department responded within a few days that "further investigation was not warranted and that an accusation of discrimination would not be issued."

Upon her return from leave in October 2008, Preston and Faust had regularly scheduled Monday telephone conferences to discuss Preston's activities and performance.  Preston requested that her attorney be

present on these weekly phone calls, which was against Faust's policy when Faust was discussing performance issues with an employee. (Defs. SUF 39.)

On Monday, December 1, 2008, Faust and Human Resources officer Karen Nation called Preston to discuss her performance.  Preston did not pick up the phone, refusing to talk to Faust without her attorney present.  (Defs. SUF 34, 38.)  Faust emailed to reschedule the call to the following week, but Preston again refused to take the call.  (Defs. SUF 43.)  On December 10, 2008, Faust recommended that Preston be terminated, and Defendants then terminated her.  (Defs. SUF 44.) Defendants hired an unmarried female to take Preston's Regional Manager position. (Defs. SUF 45.)

On July 6, 2009, Preston filed a complaint against Defendants in Los Angeles Superior Court, alleging various causes of action stemming from Defendants' sex and marital status. (Compl., ¶ 24.)

During the time of Preston's employment, Faust also supervised four other female Regional Managers and one male Regional Manager.  Of the female Regional Mangers, one was an unmarried female, Sue Forrester.  However, Preston alleges that she was the only unmarried female under Faust's supervision since Forrester was gay and in a long-term relationship with a partner and children.

In her Complaint, Preston alleges that Faust allowed other Regional Managers under his supervision to get credit towards their annual sales goals for sales toward a commercial competitor laboratory sources while Preston was not allowed to. (Compl. ¶ 19.) Preston further alleges that the only other Regional Manager to receive a Correction Action and "Performance Improvement Plan," a married male

manager, was given seven months to complete his goals, while Preston was only given two and a half months.

## II.   LEGAL STANDARD

### A.   SUMMARY JUDGMENT

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Tarin v. County of Los Angeles</u>, 123 F.3d 1259, 1263 (9th Cir. 1997).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  <u>See</u> <u>Celotex Corp v.</u> <u>Catrett</u>, 477 U.S. 317, 323-24 (1986).  The moving party may satisfy its Rule 56(c) burden by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  <u>Celotex</u>, 477 U.S. at 325.

Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial.  <u>See</u> <u>id.</u> at 323-34; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.  <u>Addisu v.</u> <u>Fred Meyer</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  Only genuine disputes "where the evidence is such that a reasonable jury could return a verdict for the nonmoving party" over facts that might affect the

outcome of the suit under the governing law will properly preclude the
entry of summary judgment.  See Anderson, 477 U.S. at 248.

**B.   EMPLOYMENT DISCRIMINATION**

The central cause of action is brought under California's Fair
Employment and Housing Act, which prohibits adverse employment actions
based on the "race, religious creed, color, national origin, ancestry,
physical disability, mental disability, medical condition, marital
status, sex, age, or sexual orientation of any person."  Cal. Gov. Code
§ 12940(a).[2]  Preston alleges discrimination on the basis of sex and
marital status.

California employment discrimination claims follow the general
burden-shifting framework of McDonnell Douglas v. Green, 411 U.S. 792
(1973).  See Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354-55
(2000).  In applying the burden-shifting framework, courts generally
use state and federal caselaw interchangeably.  See, e.g., Nidds v.
Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996)
("California courts interpreting FEHA often look to federal cases. . .
. Therefore, we too rely on such cases where helpful.").  Summary
judgment is generally disfavored in this area of law, and courts
therefore apply "a high standard for the granting of summary judgment
in employment discrimination cases." Schnidrig v. Columbia Mach., Inc.,
80 F.3d 1406, 1410 (9th Cir.), *cert. denied*, 519 U.S. 927, 117 S.Ct.
295, 136 L.Ed.2d 214 (1996).

To establish a prima facie case of discrimination, a plaintiff
must show that "(1) [s]he is a member of a protected class; (2) [s]he

---

[2] The act also extends protection to persons who are *perceived* to
have[] any of those characteristics."  Id. at § 12926(m) (emphasis
added).

was qualified for his position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside h[er] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 204).

Once the plaintiff has made a prima facie showing, the burden shifts to the defendant to show that the employment decision was made for legitimate, nondiscriminatory reasons. Guz, 24 Cal. 4th at 334-35.

If the employer produces evidence of a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must produce responsive evidence, either directly by showing that the employer in fact discriminated, or indirectly by showing that the employer's reasons for the adverse employment action are pretextual. Horn v. Cushman & Wakefield Western, Inc., 72 Cal. App. 4th 798, 807 (1999); see also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1287 (9th Cir. 2000) ("To survive summary judgment, the burden is on [the plaintiff] to 'produce enough evidence to allow a reasonable factfinder to conclude either: (a) that the alleged reason for [her] discharge was false, or (b) that the true reason for his discharge was a discriminatory one.'") (quoting Nidds, 113 F.3d at 918). Bradley v. Harcourt, Brace and Company, 104 F. 3d 267, 279 (9th Cir. 1996). The burden is on the plaintiff to introduce direct or circumstantial evidence giving rise to a reasonable inference of discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Slatkin v. University of Redlands, 88 Cal. App. 4th 1147, 1158 (2001) ("there must be evidence supporting a rational inference that intentional

discrimination . . . was the true cause of the employer's actions"). If the plaintiff relies on circumstantial evidence to rebut the employers' showing of non-discriminatory reasons for its action, "that evidence must be specific and substantial to defeat the employer's motion for summary judgment." Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1095 (9th Cir. 2005) (internal quotations omitted).

## III. PLAINTIFF HAS NOT MADE A PRIMA FACIE SHOWING OF EMPLOYMENT DISCRIMINATION

Defendants contend that Preston cannot identify any triable issues that support her prima facie claim on her employment discrimination cause of action.

Recall that the prima facie case requires Preston to show: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for his position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside h[er] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Peterson, 358 F.3d at 603.

Only the fourth requirement is in dispute.  Defendants assert that Preston is unable to identify either (1) any evidence showing that other employees who were not female and/or unmarried were treated more favorably than Preston, or (2) any other evidence "giv[ing] rise to an inference of discrimination." Peterson, 358 F.3d at 603.

It is helpful to address each alleged act of discrimination separately.  Preston contends that she experienced three separate

adverse employment actions: first, being put on a "Performance Improvement Plan"; second, being denied commissions on the "Westcliff" sale and being denied "preferred pricing" on "Primex"; and third, being terminated.  Preston contends that other similarly situated individuals (that is, unmarried persons and/or females), did not experience these adverse employment actions.

Preston fails to support her contentions with admissible evidence; accordingly, Preston has failed to raise a triable issue of fact as to the fourth element of her prima facie case.  Defendants are entitled to summary judgment on this claim.

**A.   First Adverse Action: the Performance Improvement Plan**

Preston contends that "other Regional Managers were not put on a [Performance Improvement Plan]."  (Opp. at 6.)  Specifically, Preston argues that two other females (one of whom, like Preston, was also unmarried) had similar sales performances but were not placed on Performance Improvement Plans.  (Opp. at 6-7.)

At the outset, it is important to note that during Steele Faust's tenure as Preston's direct supervisor, Faust supervised only five Regional Managers.  (SUF 22.)  Four of these individuals were female and one was male.  (Id.)  In addition, one of these employees, Sue Forrester, was also an unmarried female like Preston.  (Id.)[3]

---

[3] Preston claims that Sue Forrester is, for all intents and purposes, a "married" female.  Preston, in her own declaration, states that Forrester "Sue Forrester is gay, has a live in partner and they have a child.  So her relationship is stable and similar to a marriage." (Preston Decl. ¶ 7.)

Defendants object to this statement because it lacks foundation and personal knowledge.  (Docket no. 49-1 at ¶ 12, citing Fed. R. Evid. § 602.)  Defendants' objections is SUSTAINED.  Preston fails to lay a foundation to establish her personal knowledge of Forrester's personal lifestyle.                                    (Cont'd...)

As for Preston's argument that Faust's decision to place her on a Performance Improvement Plan was discriminatory because two other employees had similar sales shortfalls, this argument fails to raise any inference that Faust was acting in a *discriminatory* manner.  As Preston acknowledges, these two similarly situated underperforming employees were both females.  Additionally, another one of these similarly situated employees was an unmarried female like Preston.  The fact that Faust placed Preston, but not those other employees, on a Performance Improvement Plan fails to support Preston's prima facie case of discrimination.

---

Notably, Preston has also included a Declaration from Sue Forrester herself.  Forrester's declaration is silent regarding her personal lifestyle.

In addition, even if Preston had introduced admissible evidence to the effect that Forrester has a "live in partner," the California Supreme Court, in the context of interpreting the analogous Unruh Civil Rights Act, has explicitly noted that:

> marital status claims are cognizable under the Unruh Civil Rights Act, but, for purposes of such claims, **a distinction exists between registered domestic partners** (*see* Fam.Code, § 297 et seq.) **and other unmarried couples and individuals.** Domestic partners registered under the California Domestic Partner Rights and Responsibilities Act of 2003 (the Domestic Partner Act), the current version of the domestic partnership law, are the equivalent of spouses for the purposes of the Act.

Koebke v. Bernardo Heights Country Club, 36 Cal.4th 824, 831 (2005) (emphasis added).

Thus, it appears that under the California Supreme Court's the Unruh Civil Rights Act, a gay person will only be considered to be "married" for purposes of the Fair Employment and Housing Act if she is either married or has entered into a registered domestic partnership.

Here, there is absolutely no evidence, either admissible or inadmissible, in the record to show that Forrester (who is a resident of Oregon, *see* Forrester Decl.), is married or is part of a registered domestic partnership.  Thus, even if the Court were to consider the inadmissible facts stated in Preston's declaration, this evidence is not relevant for purposes of the Motion.

10

Further, Defendants have introduced evidence that Preston's supervisor Steele Faust has placed only one other Regional Manager on a "Performance Improvement Plan." Prior to placing Preston on a Performance Improvement Plan, Faust placed Dave Brown on a Performance Improvement Plan. Notably, Brown is a married male. (SUF 6, 8.)[4] Accordingly, not only has Preston failed to show that Defendants treated unmarried women differently from other employees, but Defendants have successfully shown the exact opposite: Faust treated Preston in the same exact manner as he treated a married man. Furthermore, Defendants have introduced unrebutted evidence that an unmarried female Regional Manager (Sue Forrester) was **not** placed on a Performance Improvement Plan. (See SUF 8-9, 23, 25; Faust Decl. ¶¶ 4, 7.) Defendants have also introduced unrebutted evidence establishing that Faust gave an unmarried female Regional Manager, Sue Forrester, special awards in 2006 and 2007 for her sales performance. (SUF 23-24.) Further, Defendants have introduced unrebutted evidence showing that Faust gave another women (who is apparently married) a similar award. (Id.) Defendants have therefore introduced evidence strong showing that Defendants were **not** discriminating, and Preston has identified no evidence showing that Defendants **were** discriminating. In fact, Preston has not even attempted to refute Defendants' contention

---

[4] Preston does not object to Defendants' use of Steele Faust's declaration to establish Dave Brown's gender and marital status. Even if Preston had objected, the California Fair Employment and Housing Act provides that the decision-maker's *perceptions* of gender and marital status are legally equivalent to the *actual* gender and marital status. Cal. Gov. Code § 12926(m.) Because Faust was the relevant decision-maker regarding the institution of a "Performance Improvement Plan," Faust's *perception* of Brown's gender and marital status is a legally material fact, and Faust's declaration is therefore admissible to establish that fact.

that "Aside from herself, Preston is unable to identify any female or unmarried employees that Faust allegedly treated adversely."  (SUF 25.)

In response to Defendants' showing that there is an absence of discrimination, Preston attempts to argue that there is a triable issue of fact as to whether Faust gave Dave Brown a more lenient Performance Improvement Plan than Faust gave to Preston.  Preston asserts that this fact gives rise to an inference that Faust treated married men more favorably than he treated unmarried women.

The facts are this: Faust issued a Performance Improvement Plan to Brown in November 2005.  (Faust Decl. Ex. C.)  Faust issued a Performance Improvement Plan to Preston in March 2008. (Preston Decl. ¶ 13.)  Both Performance Improvement Plans called for monthly follow up meetings on each of the stated goals.  The Plans also provided various dates under the "timeframe for accomplishing heading."  These timeframes offered the employees the following number of months to complete certain goals:

| Goal | Brown | Preston |
|------|-------|---------|
| General New Account Closure Goals | 7 months | 3 months |
| Provide Account Plans to Clients | n/a | 1 month |
| Attend Formal Training Course | 3 months | n/a |
| "Sales Funnel Activity" Goals | "ongoing" | "ongoing" |
| Complete "Time and Territory Management" Exercise | 1 month | "ongoing" |
| General "Outreach" Goals | "ongoing" | "ongoing" |
| "SAP Minimum Requirements" | n/a | "weekly" |

| Meeting Attendance | n/a | "weekly" |
|---|---|---|
| Weekly Call Reports | n/a | "weekly" |
| "GPO Promotions" | 1 month for some goals; "weekly" for another | n/a |

(Preston Decl. Ex. 6; Faust Decl. Ex. C.)

This chart reveals that there is little material difference between the two plans, except that Brown was given seven months to accomplish his goal for new account closures, whereas Preston was given three months to do the same.  But aside from this single goal, there is little significant difference between the two Performance Improvement Plans.  In fact, Brown is given a shorter time span than Preston for various goals.  Also, a number of specific goals are different for Brown and Preston.  It appears, then, that Brown and Preston displayed different strengths and weaknesses, and therefore required different Performance Improvement Plans to address those specific strengths and weaknesses.

In light of Defendants' overwhelming evidence to the effect that Faust treated an unmarried female employee (Sue Forrester) favorably, that he treated another female employee favorably, and that he treated a married male (Dave Brown) in a materially similar manner to how he treated Preston, Preston has failed to introduce any evidence giving rise to any reasonable inferences that Faust's decision to place Preston on a Performance Improvement Plan was discriminatory.  Preston has therefore failed to satisfy her burden of establishing a prima facie case of discrimination.

**B.   Second Adverse Action: Failing to Provide Commissions**

Preston asserts that Defendants also engaged in discriminatory employment actions by denying her commissions on certain sales.  In

response, Defendants correctly point out that "Plaintiff's opposition is absent of any facts that other Regional Managers were treated more favorably regarding commissions and pricing." (Reply at 3.) Ultimately, Preston fails to show a prima facie case of discrimination because she introduces no evidence showing that married and/or male employees received commissions that they were not entitled to receive, or that other unmarried females were also denied commissions that they were entitled to receive.

Preston argues that "Faust would not give Plaintiff commissions for the Westcliff account. Westcliff had been categorized as transactional not commercial. Westcliff was a regional laboratory that did not compete with Mayo." (Opp. at 8.) Preston also argues that "Faust would not give Plaintiff preferred pricing on Primex. Primex is a regional laboratory that did not compete with Mayo in other states." (Id.)

Defendants argue in their Motion, "Plaintiff was not eligible for commissions on Westcliff or preferred pricing on Primex because they were **laboratories** that were neither **hospitals** nor **affiliated** with hospital[s]." (Mot. at 12, emphasis added.) Further, in their Reply, Defendants argue that Faust had a good faith belief (whether or not it was correct) that the Primex account was not a hospital or hospital-affiliated laboratory, and thus was not eligible for commissions. (Reply at 9.)

Preston argues that Defendants acted in a discriminatory fashion by refusing to provide Preston with commissions for the Westcliff account and by refusing to allow her to have "preferred pricing" on the Primex account. Defendants respond by arguing that Plaintiff was not

14

entitled to those commissions.  But in fact, neither parties' arguments are supported by the record.  The *admissible* facts are as follows.

Sometime prior to May 27, 2008 Faust and Defendants doubled their bid on the "Primex" account, thus preventing Preston from getting the account.  (Pl. MF 37.)  Defendants have submitted a contemporaneous email from Faust to Preston in which Faust stated his reasons for handling the Primex account in this manner.  He wrote in his email that Primex was a "regional commercial lab and as such, we agreed upon pricing that is similar to our current commercial labs."  He also explained that "it would not be beneficial to provide better pricing to a competitive regional lab than to your hospitals.  Providing lower pricing to a commercial regional lab could have the potential to undermine our clients['] outreach activities and possibly hurt their ability to provide their services to their local community.  This would be completely against our mission of supporting the local hospital." (Faust Decl. Ex. D.)

With respect to the "Westcliff" account, on October 15, 2008, Faust informed Preston that this account would be upgraded to a "secondary" account rather than a "transactional" account.  (Preston Decl. Ex. 14.)[5]  Preston introduces unrebutted evidence showing that

---

[5] Preston Decl. Ex. 14 contains an email from Faust to Preston. Defendants' objection to the admissibility of this email is OVERRULED.  Preston states that she received the document and that it is a true and correct copy of the document she received.  This is adequate authentication of documentary evidence.  *See* Wright & Gold, 31 Federal Practice & Procedure Evidence § 7106 (2009) ("A document can be authenticated by a witness who wrote it, signed it, used it, or saw others do so."); *see also* United States v. Vaghari, No. 08-693-01-02, 2009 WL 2245097, at *8 (E.D. Pa. July 27, 2009) ("Rule 901(b)(4) provides for authentication through "[d]istinctive characteristics and the like. Appearance, contents, substance,
(Cont'd...)

1   this change would have entitled her to receive commissions on that

2   account.  (Preston Decl. ¶ 38.)  In his email, Faust states plainly,

3   "Jill, yes, we can bring them to Secondary status.  Please email Liisa

4   [sic] Nygaard with all the information so she can produce a Secondary

5   contract for West Cliff."  (Preston Decl. Ex. 14.)  Contrary to Faust's

6   email statement, the account was not ever actually upgraded to

7   "secondary" status and Preston was prevented from receiving commissions

8   on the account.  (Pl. MF 38.)

9        Even if Preston was wrongly denied commissions on the Westcliff

10  and Primex accounts, the relevant question is whether these actions

11  were *discriminatory*.  With respect to the present Motion, Preston fails

12  to introduce any admissible evidence establishing her prima facie case

13  of discrimination: namely, that Defendants did or not did treat married

14  and/or male Regional Managers differently than Preston, that Defendants

15  treated other unmarried and/or female Regional Managers similarly, or

16  that Defendants acted in some other manner giving rise to a reasonable

17  inference of discrimination.

18

19

20  ───────────────

    internal patterns, or other distinctive characteristics, taken in
21  conjunction with circumstances." Other courts have authenticated
    emails in this manner, relying on the email addresses in the headers,
22  explanations in the body of the emails, defendants' conduct after
    receiving the emails, and other circumstantial evidence.")
23  (collecting cases).

24       To the extent that it is hearsay, it is being offered against a
    party opponent.  Fed. R. Evid. 801(d)(2)(D) ("A statement is not
25  hearsay if . . . [t]he statement is offered against a party and is .
    . . a statement by the party's agent or servant concerning a matter
26  within the scope of the agency or employment, made during the
    existence of the relationship.").

27       To the extent that the email is being taken out of context or is
    otherwise misleading, Defendants bear the burden of introducing
28  evidence to clarify the meaning of the email.

Preston's Opposition on this issue relies entirely on inadmissible evidence and as such cannot provide a basis for defeating Summary Judgment. <u>See</u> Fed. R. Civ. P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be *admissible in evidence*, and show that the affiant is competent to testify on the matters stated.") (emphasis added); <u>see also</u> <u>Orr v. Bank of America, NT & SA</u>, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").

Preston argues that a married male, John Heywood, **was** in fact given a commission on a transaction similar to Preston's "Primex" and "Westcliff" transactions. (<u>See</u> Def. SMF 13.)  Preston submits her own declaration and the declaration of Sue Forrester in an attempt to show that John Heywood was given a commission on the so-called "PAML" transaction. (Preston Decl. ¶¶ 9, 32, & Ex. 11; Forrester Decl. ¶ 6.) However, these declarations fail to identify how Preston and Forrester have personal knowledge that (1) Heywood actually received a commission on this deal, and (2) PAML is in fact a "commercial" laboratory or is otherwise similar to Primex or Westcliff.  Tellingly, Forrester's declaration states "**I define** PAML as being a commercial laboratory," (Forrester Decl. ¶ 5) (emphasis added), and Preston's declaration states "Heywood received commission from PAML which **I believe** is a commercial laboratory." (Preston Decl. ¶ 9, emphasis added.)

In her attempt to bolster her argument that PAML is a "commercial" laboratory, Preston introduces a document titled "FIN Account Revenue Report" for an item called "PAML 2008." (Preston Decl. Ex. 11.) Preston states that this document is a "true and correct copy of the"

17

"Fin Account Revenue Report for 2008," and that it "shows PAML as being a commercial account in 2007 and 2007."  (Preston Decl. ¶ 32.) Defendants' objection to all of this evidence — the Preston Declaration, the Forrester Declaration, and the "Fin Account Revenue Report for 2008" — is SUSTAINED.  (Docket no. 49-1, at ¶¶ 14-15, 55; docket no. 49-2 at ¶¶ 8, 12, 14.)  The declarants fail to explain how they have personal knowledge of the attested facts.  Much of their testimony is speculative on its face.  Finally, with respect to the "Account Revenue Report" document, Preston fails to lay an adequate foundation to admit this document.  See United States v. Dibble, 429 F.2d 598, 602 (9th Cir. 1970) ("A writing is not authenticated simply by attaching it to an affidavit. . . .  The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery.").[6]

---

[6]     Defendants also attempt to rely on inadmissible evidence in an attempt to bolster their case.  However, because Preston bears the burden of introducing admissible evidence to support her prima facie case, Defendants' reliance on inadmissible evidence does not affect the outcome of the Motion.
        Specifically, Defendants attempt to show that an unmarried female **was** in fact given a commission on a transaction similar to the Primex and/or Westcliff transaction.  (See SUF 20.)  However, this "fact" is drawn entirely from **Preston's** deposition.  Defendants fail to show that Preston had personal knowledge of this fact.  Indeed, Preston herself stated at the deposition that she was unsure and was only testifying about her personal opinion regarding the other Manager's transaction.  (Pl. Depo. at 106-107.)  This is not admissible evidence.
        Defendants also attempt to show that a married male **was not** given a commission on a transaction similar to the Primex and/or Westcliff transaction.  (See SUF 18-19.)  Again, however, this fact is drawn entirely from Preston's deposition, and Preston fails to testify on the basis of personal knowledge that the married man's transaction was in fact similar to her own transactions.  (See Pl. Depo. at 105-106, 180, 467, 469.)

In short, Preston fails to identify *any evidence* to show that the "Westcliff" and "Primex" accounts provide an inference of discrimination.  Preston fails to show that other unmarried and/or female employees were treated similarly; that married and/or male employees were treated more favorably; or that any other aspect of Defendants' payments of commissions give rise to an inference of discrimination.  As such, Preston has failed to satisfy her threshold burden of establishing a prima facie case of discrimination.

### C.   Third Adverse Action: Terminating Preston

As a final argument, Preston argues that her termination is another example of Defendants' discrimination.  Again, Defendants correct point out that "Plaintiff has not provided any evidence that gives rise to an in[]ference of discrimination in regard to her termination." (Reply at 3.)

It is undisputed that after Preston was terminated Faust replaced her with another unmarried female.  (SUF 45.)  It is also undisputed that, when Preston was terminated, Faust retained at least one other unmarried female.  (See Forrester Decl. ¶ 1 (stating that Forrester worked for Defendants through November 2009).)

The circumstances surrounding Preston's termination do not give rise to any inference of discrimination.  Preston has not made her prima facie case.  See Peterson, 358 F.3d at 603.

### D.   Summary

Preston has not made a prima facie showing that she suffered an adverse employment action on account of her gender or marital status.  Her cause of action for employment discrimination therefore fails.  See, e.g., Hagans v. Andrus, 651 F.2d 622, 625 (9th Cir. 1981) ("a

proper prima facie case identifies sex as the likely reason for the [adverse employment action] . . . . [P]roof of discriminatory motive is critical.") (citations omitted); accord Ibarra v. Sunset Scavenger Co., No. C 01-2875 SI, 2003 WL 21244096, at *6-7 (N.D. Cal. May 21, 2003) ("To survive summary judgment on his race discrimination claims plaintiff must show that others similarly situated to plaintiff were treated better because they were not Latino. This Court has thoroughly reviewed defendants' responses to plaintiff's discovery requests regarding the race of other employees who were either suspended or terminated because they were not licensed. The record does not show any clear race-based pattern associated with these suspensions and terminations.").

**IV.   REMAINING CAUSES OF ACTION**

Preston has raised four additional causes of action: retaliation for complaining about discrimination, breach of contract, wrongful termination, and failure to prevent discrimination and retaliation. These causes of action are all survive summary judgment to the extent that they identify adverse employment actions allegedly made as a result of Preston's filing complaints with Defendants' Human Resources department and the California Department of Fair Employment and Housing.

   **A.   Retaliation**

   In her second cause of action, Preston asserts that she was unlawfully retaliated against.  As explained by the California Court of Appeal:

Government Code section 12940, subdivision (h) makes it unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any [discriminatory] practices forbidden under this part [that is, Cal. Gov. Code § 12940] or because the person has filed a complaint, testified, or assisted in any proceeding under this part." To establish a prima facie case of retaliation, the plaintiff must show he or she engaged in a "protected activity," the employer subjected the employee to an adverse employment action, and a causal link existed between the protected activity and the employer's action. McRae v. Department of Corrections and Rehabilitation, 142 Cal. App. 4th 377, 386 (2006).  To establish the requisite "causal link," the plaintiff must show that a "retaliatory animus was a but-for cause" — but not necessarily the "**sole**[]" cause — "of the employer's adverse action."  Reeves v. Safeway Stores, Inc., 121 Cal. App. 4th 95, 107 (2004) (quoting Clark v. Claremont Univ. Ctr., 6 Cal. App. 4th 639, 665 n.6 (1992)).

It is undisputed that Preston complained to her employer about gender discrimination and filed a complaint with the California Department of Fair Employment and Housing.  All of these complaints alleged gender discrimination, and the later complaints alleged marital discrimination.  These activities took place almost immediately prior to the time that Defendants denied Preston commissions on the "Westcliff" transaction and then terminated Preston.  Preston has therefore satisfied her burden of making a prima facie showing of

unlawful retaliation with respect to the "Westcliff" commissions and the termination.

Under McDonnell-Douglas, the burden then shifts to Defendants to show legitimate non-retaliatory reasons for its employment decision. Reeves, 121 Cal. App. 4th at 111-12.  As is discussed in greater detail infra, Defendants mainly show that Preston was terminated due to poor performance – namely, inadequate sales, unprofessional emails, and general insubordination during her final months of employment.

If Defendants' rebuttal evidence is credited, then the burden shifts back to the plaintiff to "attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." Guz, 24 Cal. 4th at 355-56.  "[E]vidence of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias." Id.  However, even if an employer's reasons are objectively false – i.e., an employee disputes whether or not she was qualified — "courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002); Slatkin v. University of Redlands, 88 Cal. App. 4th 1147, 1157 (2001)("The pertinent statutes do not prohibit lying, they prohibit discrimination.").

On the other hand, if the plaintiff is able to raise triable issues about whether the employer honestly believed its own justification for the termination, the case must go to the jury.  If the plaintiff shows that the justification is are not "merely wrong or mistaken" but is "unworthy of credence," this leads to a reasonable

inference that the employer's apparently legitimate explanation is in fact pretextual.  E.E.O.C. v. Boeing Co., 577 F.3d 1044, 1052 (9th Cir. 2009) (citing Tomasso v. Boeing Co., 445 F.3d 702, 708 (3d Cir. 2006)).

In addition, courts are cognizant of the fact that "even the guiltiest employer can almost certainly concoct some facially plausible explanation for its actions. The explanation need not be sound, fair, or correct, but only colorable enough that a rational jury could believe it to have been the employer's true motivation. Of course, evidence that the explanation was trumped up or is 'unworthy of credence' will tend to support a finding that the action was actually motivated by discriminatory animus, but the burden remains squarely on the plaintiff to convince a jury of that fact by a preponderance of the evidence."  Reeves, 121 Cal. App. 4th at 112 n.12 (citations omitted).

Preston argues that Defendants' justification is pretextual because Preston should have been credited with sales to Westcliff, Primex, and Pacific Diagnostic Laboratory.  However, as Defendants point out, many Preston's arguments overlook the importance of **temporality** when showing a "causal link . . . between the protected activity and the employer's action." McRae, 142 Cal. App. 4th at 386. It important to recall, then, that Preston first sent a complaint to Defendants' Human Resources department on May 27, 2008. (Def. MF 22.) Defendants are entitled to summary judgment with respect to all of the alleged "retaliatory" activities that took place **prior to** Preston's first complaint of discrimination.  For obvious reasons, Preston cannot

show that she suffered retaliation prior to the time that she made her

protected complaints.[7]

This leaves two potentially retaliatory adverse employment

actions: denial of Westcliff commissions and termination.

Defendant wholly fails to show any evidence of legitimate, non-

retaliatory reasons for denying Preston the Westcliff commissions.

Defendant's evidence is completely silent on the Westcliff deal.

---

[7] The timeline of allegedly retaliatory events is:
    -February and March 2007: Defendants make sale to Pacific
Diagnostic Laboratories in (Def. MF 1, 6.)
    -October 2007: Preston begins receiving commissions on Pacific
Diagnostic Laboratories sale.  (Pl. MF 7.)
    -January 2008: Faust sends 2007 sales data to his Regional
Managers. (Preston Decl. Ex. 3.)  Preston's sales are the lowest in
the Western Region, but according to Preston, would have been highest
had she been properly credited with the Pacific Diagnostic
Laboratories sale.  (See id.)
    -March 2008: Faust provides Preston her 2007 performance review
and places her on Performance Improvement Plan.  (Pl. MF 15.)
    -Sometime prior to May 27, 2008: Defendants "double" the bid on
the "Primex" account, thus preventing Preston from getting the
account.  (Pl. MF 37.)
    **-May 27, 2008: Preston first complains to Defendants about
alleged discrimination.**  (Pl. MF 22.)
    -August 2008: Preston files complaint with California Department
of Employment and Fair Housing.  (Nation Decl. Ex. A.)
    -early October 2008: Preston appeals her Performance Improvement
Plan and "Corrective Action".  (Pl. MF 30; see also Thurrell Decl.
Ex. C: Ex. 40 (stating that appeal was filed October 6, 2008).)
    -October 15, 2008: Faust informs Preston that the "Westcliff"
account will be upgraded to a "secondary" account rather than a
"transactional" account, which would allow Preston to receive
commissions on that account.  (Preston Decl. ¶ 38 & Ex. 14.)
    -October 2008: after filing her appeal of the Performance
Improvement Plan, Preston is prevented from receiving commissions on
the "Westcliff" account.  (Pl. MF 38.)
    -October 28, 2008: Preston receives email from Faust; attached
to the email is a sales sheet showing that Preston's sales increased
37% over the previous year.  (Pl. MF 31. (Defendants' objection to
the admissibility of this email is OVERRULED for the reasons stated
in footnote 7 supra.))
    -December 10, 2008: Preston is terminated.  (Preston Decl. ¶
27.)

Indeed, Faust himself stated in an email to Preston that the Westcliff deal should be classified as "secondary" rather than "transactional." (Pl. MF 48; Preston Decl. ¶ 38 & Ex. 14.)  Further, Preston has introduced unrebutted evidence that this "secondary" status would have entitled her to receive commissions on the deal.  (Preston Decl. ¶ 38.) In their Reply, Defendants assert --- without citation to factual support --- that "it was Faust's understanding that this laboratory was Defendants' direct competitor . . . and therefore [he] barred any Regional Manager, including Plaintiff, from receiving commissions." (Reply at 9.)  However, none of Defendants' documentary evidence — including Faust's own declaration --- even **mentions** the Westcliff transaction.  Even if such evidence is hiding somewhere in the evidentiary record, Defendants have failed to satisfy their summary judgment burden of identifying this evidence for the Court.  See Carmen v. San Francisco United School District, 237 F.3d 1026, 1029 (9th Cir. 2001) (court need not "comb the record" looking for evidence to establish a party's contentions on summary judgment).  Defendants therefore have failed to satisfy their burden under the second step of the McDonnell Douglas burden-shifting framework.  Plaintiff's retaliation claim relating to the denial of "Westcliff" commissions must go to trial.

As for Plaintiff's claim that her termination was retaliatory, Defendants contemporaneously offered three reasons for terminating Preston: (1) insubordination, particularly with respect to Preston's failure to attend personnel-related meetings, failure to talk over the phone with Faust and other supervisors, and use of rude and inappropriate tone in her emails with Faust and others; and (2) her

performance was not up to par and she was not meeting the goals stated
in her Performance Improvement Plan.  (Thurrell Decl. Ex. C: Ex. 51.)
In full, the termination report stated:

> Jill, you have refused to meet to discuss your performance
> problems[,] which is considered insubordination and clearly
> demonstrates that you are not interested in continuing your
> employment at Mayo Clinic. Your overall performance is not meeting
> expectations and you are not meeting the goals set forth in the
> Performance Improvement Plan that is in place.  You were given a
> written warning level corrective action on 3/18/2008 and placed in
> a performance improvement plan.  You were given a suspension level
> corrective action for performance related issues on 12/2/2008 and
> your [Performance Improvement Plan] was extended.  Since that time
> you have not followed the directive you were given to stop sending
> your supervisor inappropriate, disrespectful and untruthful
> harassing emails.  This ongoing insubordinate behavior and your
> overall ongoing poor performance have led to the decision to
> terminate your employment effective today 12/10/2008.

(Id.)

Defendants have therefore satisfied their burden of showing
legitimate non-retaliatory reasons for the termination.

Preston has, however, raised a triable issue of fact to suggest
that these explanations were pretextual, either because they were
untrue or were so trivial as to be an insufficient basis for the
termination.[8]  Recall that "evidence that the explanation was trumped up

---

[8] Note that "temporal proximity [between the employee's protected act
and the employer's alleged retaliation], although sufficient to shift
(Cont'd...)

or is 'unworthy of credence' will tend to support a finding that the action was actually motivated by discriminatory animus." <u>Reeves</u>, 121 Cal. App. 4th at 112 n.12.

Plaintiff has raised a triable issue of fact as to whether her performance was satisfactory and as to whether Defendants' claims of insubordination were "trumped up" or "unworthy of credence." <u>Reeves</u>, 121 Cal. App. 4th at 112 n.12. Specifically, Preston introduces evidence showing that, in late October 2008, Faust informed her that her sales had increased **37%** over the previous year. (Pl. MF 31.)[9] Furthermore, Preston achieved this large increase despite being absent for approximately three months. (<u>See</u> Pl. MF 47.)

Given this large increase in sales, Preston has raised a triable dispute as to whether she was performing satisfactorily. This is particularly true given the fact that she was a salesperson, and common sense counsels that a salesperson's central goal is to increase sales. Other employment goals are generally secondary to that central task. Thus, to the extent that Defendants fired Preston for failing to comply with the non-sales-related aspects of the Performance Improvement Plan, Preston has raised triable issues of fact as to whether those non-sales-related requirements constitute a "trumped up" ---- and hence pretextual — reason for firing her. See <u>Reeves</u>, 121 Cal. App. 4th at 112 n.12; <u>see also</u> <u>Savina v. Robert Resier & Co., Inc.</u>, No. 09-15065,

the burden to the employer to articulate a nondiscriminatory reason for the adverse employment action, does not, without more, suffice also to satisfy the secondary burden borne by the employee to show a triable issue of fact on whether the employer's articulated reason was untrue and pretextual." <u>Loggins v. Kaiser Permanente Intern.</u>, 151 Cal. App. 4th 1102, 1112.

[9] Defendants' objection to the admissibility of this email is OVERRULED for the reasons stated in footnote 5 *supra*.

2010 WL 331437, at *1-2 (9th Cir. Jan. 26, 2010) (mem. disp.) (citable pursuant to Fed. R. App. 32.1) (reversing grant of summary judgment where plaintiff-salesman's evidence showed that he "was on track to achieve one of the best annual sales performances of his tenure," thus raising inference that defendant's performance-related justification was pretextual).

To the extent that Defendants fired Preston for unprofessional behavior and insubordination, Preston has introduced undisputed evidence showing that she was "easy to work with." (Pl. MF 35-36, 44, 53.) Although Preston fails to raise triable disputes as to the fact that she sent unprofessional emails to Faust and others, she does raise a sufficient factual dispute as to whether or not Defendants' decision to fire her for a few instances of "insubordination" was "trumped up" and pretextual. Reeves, 121 Cal. App. 4th at 112 n.12.

In summary, Preston has introduced undisputed evidence that she was entitled to commissions for the Westcliff account. Further, Preston has introduced factual disputes about the truthfulness of Defendants' stated reasons for terminating her, and/or about the materiality of the stated reasons and whether or not they were "trumped up." Preston has therefore raised a triable inference that the denial of the Westcliff commissions and the termination were retaliatory acts related to Preston's complaints about discrimination.

**B.   Breach of Contract**

Generally, there is no cause of action for breach of contract if the employment relationship is "at-will." See Guz, 24 Cal. 4th at 335-36. "But the parties are free to define their relationship, including the terms on which it can be ended, as they wish. The parties may reach

any contrary understanding, otherwise lawful, concerning either the term of employment or the grounds or manner of termination." Id. at 336 (quotations omitted).

Here, Preston's relationship with Defendants was generally "at will." (Wendorff Decl. Ex. A.)  However, Preston has introduced evidence that Defendants stated that they would not terminate employees for filing complaints about "suspected wrongdoing" or for filing appeals of "work-related employee issues." (Preston Decl. Ex. 8, 17; see also Pl. MF 30, 51.)

Sometime after receiving her Performance Improvement Plan, Preston filed a complaint about Faust's actions. (Pl. MF 50.)  In October 2008, Preston filed an appeal of the Performance Improvement Plan and Corrective Action. (Pl. MF 30.)  Preston has therefore raised a triable issue that Defendants breached a contractual term of their employment relationship with Preston — namely, that employees will not be terminated for filing complaints or appeals such as the ones Preston filed.

Defendants' entire counter-argument relies on the argument that the parties' relationship was at-will, and at-will employees may not bring breach of contract actions.  However, as explained in Guz, parties may contractually alter the at-will relationship.  24 Cal. 4th at 335-36.  Here, Preston has identified Defendants' contractual promises not to terminate employees in certain situations.  The general rule regarding "at-will" employment is overcome when the parties make specific provisions regarding the nature of the employment relationship.  See Cal. Labor Code § 2922.

Preston has therefore raised a triable issue of fact as to whether Defendants violated specific contractual terms governing Preston's employment relationship.

**C.   Wrongful Termination in Violation of Public Policy**

Because Preston has raised a triable issue regarding her retaliation claim, she has also raised a triable issue regarding her wrongful termination in violation of public policy claim under Article One, Section Eight of the California Constitution.  See Phillips v. St. Mary Regional Medical Center, 96 Cal. App. 4th 218, 230-33 (2002) (holding that Cal. Const. art I, sec. 8 establishes public policy against terminating an employee for filing allegations of discrimination with authorities).

**D.   Failure to Prevent Discrimination or Retaliation**

Likewise, because Preston has raised a triable issue regarding her retaliation claim, she has also raised a triable issue regarding her failure to prevent retaliation claim under Cal. Gov. Code § 12940(k). See Taylor v. City of Los Angeles Dept. of Water and Power, 144 Cal. App. 4th 1216, 1239-40 (2006) (holding that Cal. Gov. Code § 12940(k) establishes cause of action for employer's failure to prevent retaliation, as retaliation is viewed as a form of discrimination), *disapproved of on other grounds by* Jones v. Lodge at Torrey Pines P'ship, 42 Cal. 4th 1158, 1163 (2008) .

**V.   SUMMARY**

Preston has raised triable issues of fact regarding: (1) whether Defendants retaliated against her by denying her the Westcliff

commission; (2) whether Defendants retaliated against her by terminating her; (3) whether Defendants breached a contractual obligation not to fire her for filing internal appeals and complaints; (4) whether Defendants wrongfully terminated her employment in violation of public policy by retaliating against her; and (5) whether Defendants failed to prevent their agents from retaliating against her.

Defendants are entitled to summary judgment on the remaining claims, including the entirety of the discrimination claim.

The Court notes that the parties have submitted a stipulation to continue trial from May 25 to June 8. [Docket no. 55.] The request is DENIED.  The present Order provides the parties and their witnesses adequate opportunity to prepare for a May 25 trial.

The Court also notes its concern about the manner in which the remaining causes of action will be presented to the jury.  The Court is concerned that, unless the jury is informed that the discrimination allegations are no longer viable, the jury will speculate about the results of the discrimination complaints to the Human Resources department and the California Department of Employment and Fair Housing.  The parties are therefore ORDERED to meet and confer regarding question of how the Court should present the outcome of Plaintiff's discrimination claim to the jury.  If they find that mutual agreement on this issue is unlikely, they are ORDERED to file cross-motions in limine no later than May 10, 2010, with Oppositions due on May 14, 2010.  The Court will address the matter further at the May 17 Pretrial Conference.

///

///

**VI.   CONCLUSION**

     For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED-IN-PART and DENIED-IN-PART.  The parties must proceed to trial on the second through fifth causes of action with respect to the "Westcliff" commission and the termination.  The parties are ORDERED to meet and confer and file cross-motions in limine relating to the question of how the discrimination complaints should be presented to the jury.


          IT IS SO ORDERED.


DATED:   May 4, 2010                      _____

                                              STEPHEN V. WILSON

                                          UNITED STATES DISTRICT JUDGE